*(margin: NEW ORLEANS AND CARROLLTON RAILROAD COMPANY. v. CARROLLTON.)*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

McCORD et al. *v.* THE WEST FELICIANA RAILROAD COMPANY.

Decision in *Seaton* v. *Second Municipality*, ante p. 44, affirmed.

Though there have been repeated violations of a contract by both parties, yet if neither elects to consider it broken, and they proceed under it, neither can be considered as having been in default.

A contract made by a partnership, as undertakers for the construction of a railroad, will be cancelled by the death of any of the parties, unless the other party consent that the work shall be continued by the heirs of the deceased, or by others employed by them for that purpose. C. C. 2737. A refusal to give such consent will not subject the party refusing to damages. He is only bound to pay to the heirs the value of the work already done, and that of the materials already prepared, proportionably to the price agreed on, in case such work and materials may be useful to him. C. C. 2738.

McCORD
*v.*
WEST FELICI-
ANA RAILROAD
COMPANY.

APPEAL from the District Court of West Feliciana, *Butler*, J., presiding. *T. G. Morgan*, for the appellants. *Z. S. Lyons, Muse* and *Merrick*, for the defendants. The judgment of the court was pronounced by

ROST, J. The plaintiffs allege that, on the 13th of January, 1836, they entered into a contract with the defendants for the construction of the West Feliciana Railroad, which contract is annexed to their petition; that the work required, and the materials to be furnished to execute this contract, amounted to the sum of $500,000, including extra charges for changes and alterations; that soon after the date of this contract they entered upon the execution of it, and continued to discharge their obligations under it up to the 1st of August, 1836, when they were under the necessity of suspending operations; but that antecedently they had taken all the steps and measures necessary for the full compliance with the said contract on their part, by engaging laborers and workmen, purchasing the necessary quantity of lumber, providing tools, implements, &c. They further represent that they furnished all the necessary materials to construct, and did actually construct, a large portion of the road, and that the said materials and labor, together with extra allowances for changes of tressle-work to embankment, with other extra work and materials and lumber supplied, are worth the sum claimed. The petition further charges that, by another contract with the defendants, they were bound to make a bridge across the bayou Sara, for which they are entitled to recover $30,000. The plaintiffs ask judgment for $530,000.

They further allege that the defendants failed and refused to comply with the contract on their part, for this: *First*, that they did not, after the expiration of the first month, pay the sums due petitioners under it, neither did they thereafter pay them monthly the several sums due them. *Secondly*, that they did not furnish the iron plate, rails, cut iron, chains, splicing plates, and a requisite quantity of spikes, and neglected to have an engineer on the premises. *Thirdly*, that the defendants did not permit their engineer to make true and correct estimates of the amount of work done by the plaintiffs at the expiration of each month, according to his own knowledge of the amount and character of said work, and his own measurement of the same, and the true intent and meaning of the contract; but, to the injury of the rights of the plaintiffs, insisted upon said engineer's making his monthly estimates of the work and labor done by the plaintiffs, at the caprice and pleasure of the president and directors or agents of said company. *Fourthly*, that the defendants insisted upon paying the estimates incorrectly made as above charged, in the depreciated notes of the West Feliciana Railroad Bank, and other depreciated bank notes of the State of Mississippi, and wholly refused to pay the same in gold or silver, or in good bank paper. *Fifthly*, that the defendants wholly refused to pay petitioners the value of the work and labor done, and materials furnished in carrying out the change from tressle-work to embankment, and refused to furnish engineers to make estimates for the same. *Sixthly*, that the defendants wholly and altogether refused to pay petitioners the value of materials and lumber furnished by them in the construction of said road, and refused to permit their engineers to make estimates of the same. *Seventhly*, that the defendants neglected to procure the right of way over the land through which the railroad was to pass, although repeatedly requested to procure the same by petitioners.

*Eighthly*, that the defendants refused to allow estimates to be made for the

transportation of the surplus earth called spoil bank, beyond the distance named in the contract, and for other extra work.

The petitioners further allege that they have sustained much loss on a steam saw-mill built by them at the request of the defendants, and also on horses, carts and other necessary implements purchased by them to be used in the construction and completion of said railroad : That they often requested the defendants to comply with their stipulations, and notified them that they would not waive any of their rights : That the defendants still neglecting to perform, they were duly and legally put in default ; That the said defendants, intending to take an unwarrantable advantage of petitioners, instructed their engineer, after they had been put in default, to declare and determine the said contract to be abandoned; and that, in consequence of the premises, the petitioners have sustained damage to the amount of $500,000.

The defendants admit the existence of the contract, but deny every other allegation. They further aver that, the plaintiffs are precluded and estopped from contesting or disputing the correctness of the estimates of the engineers of the company, both by the terms of the contract sued on, and by the allegations and admissions in their original petition ; that the plaintiffs were at all times in delay and in default; that they did not commence working at the time stipulated, nor deliver the work within the time stipulated ; nor did they complete and finish the grading of any one mile of the road, nor in any manner comply with their contracts; that said contract was properly terminated ; and that the defendants, on their part, did comply with the contract and were ready and willing to continue to do so. They further aver that they have made advances to the plaintiffs as appears by an account annexed to their answer, and pray for judgment in reconvention against them for the amount of those advances and interest; that they advanced the plaintiffs the sum of $9,500, on account of the erection of the bridge mentioned in the petition, but that before the said bridge was completed, it fell down and was destroyed, and the materials composing it have been since seized and sold as the property of the plaintiffs by one of their creditors, whereby the said plaintiffs became bound to refund to the respondents the aforesaid sum. The answer further states that *Usal Hopkins*, one of the original members of the firm of *Isaac McCord & Co.*, died on the 20th of September, 1837; that by his death the contract was cancelled, and the subsequent abandonment of it could not have subjected them to damage, even if the plaintiffs had faithfully executed the contract up to that time. The defendants also claimed damages for the alleged breaches of contract by the plaintiffs, but that claim has been discontinued.

Upon these pleadings the case was submitted to a jury, who returned a nominal verdict in favor of the plaintiffs. The plaintiffs have appealed from the judgment rendered on this verdict; but their counsel have informed us that, unless this court can amend it in their favor, it is their wish that it be affirmed, rather than the should case be sent back for a new trial.

Our attention is first called to several bills of exception taken by the plaintiffs' counsel, some of which require to be noticed.

Two of these bills were taken to the opinion of the court rejecting the depositions of *A. B. Hamilton* and *Charles A. Snyder*, on the ground of interest in the result of the suit. These witnesses were absent, and their testimony was taken on behalf of the plaintiffs, under a commission. On its being offered, the defendants objected to it, on the ground stated. These two witnesses are shown to have represented themselves as partners of the plaintiffs. In a nota-

rial act executed by the plaintiffs, and found in the record, it is stated that *A. B. Hamilton* is one of the firm of *Isaac McCord & Co.* It is shown that, in an action commenced by the Bank of Louisiana against this firm, these two witnesses are named as partners. The answer does not deny that they are partners, and judgment was rendered against them as such. In another document found in the record, in which it became important that each member of the firm should sign in order to show what a majority of the firm had resolved to do, *Hamilton* and *Snyder* signed as partners. There are other documents in which these persons have styled themselves partners; and, in the assignment made by the firm of *McCord & Co.* for the benefit of the agents and laborers employed by them on the railroad, the names of *Hamilton* and *Snyder* are not found among the creditors, though they had been engaged on the work from the beginning, and must, if they had been merely employed by the firm, have had the largest claim against it. Whether these witnesses were general partners in the concern, or whether they had only an interest in the share of *Charles A. Snyder*, one of the original partners, is immaterial. Under the view taken by the Supreme Court in the former appeal (I. Rob. 519) the original partners represent the entire interest in the contract as between themselves and the defendants, and the share which these witnesses hold is a part of that entire interest. We are of opinion that the interest of these witnesses has been satisfactorily shown, and that the district judge did not err.

The other bills of exception were taken to the charge of the court to the jury, and to the refusal of the court to charge the jury as prayed for by the plantiffs' counsel. As the case is before us in a situation that will enable us to pass finally upon the rights of the parties, an examination of those bills of exception becomes unnessary. .

Each of the parties charges the other with many grievous breaches of contract, and the evidence goes far to show that their complaints in that respect are equally well founded, and that both were in default from the beginning. But with a view to simplify the inquiry, we will first consider the case on the hypothesis most favorable to the plaintiffs, that they had faithfully executed the contract until the 25th of September, 1837, and that the notice given them on that day by the engineer of the company that it was abandoned, was an active breach of it. The question will then be what is the rule of damages which should govern, and what evidence is required to establish them. That question was lately before us in a case not unlike the present—that of *Seaton* v. *The Second Municipality*, ante p. 44. We then held that where a contract is broken before the time of full performance and the party elects to consider it in that light, and sues for damages also before the time of full performance, the market value at the time of the breach, when there is a market value, is the measure of damages. In that case there was no market value, and we considered that the question involved a minute inquiry into the cost of the materials, the expense of their transportation to the place where they were to be used, the quantity of labor required and the value of that labor, the whole to be assessed at the time of the breach. The present case differs from this only in the circumstance that it was commenced after the time for full performance, and that as the state of the market in respect to prices was susceptible of explicit and intelligible proof at the time of the trial in the court below, no conjectural estimate was required to ascertain what would have been the expense of a complete execution of tho contract.

Whether we take the prices at the time of the breach, or at the various epochs at which the work should have been performed under the contract, as the rule of damages, the plaintiffs have equally failed to make out their case. It is clear to us that the plantiffs have no claim under the contract for the difference in value between tressle-work and embankment, from the town of St. Francis-ville to the landing. No tressle-work was represented there in the original plan, and if it had been the defendants had the right to substitute an embankment for it. All the plaintiffs' evidence in relation to damage, except that which re-fers to the difference in value between embankments and tressle-work, consists exclusively of supposed profits attempted to be shown by the probable estimates of witnesses. In the case of *Seaton,* we considered evidence of this descrip-tion as totally inadmissible. In opposition to it, in this case. the defendants have shown that, after the declaration of their engineer that the contract was abandoned, they took the work into their own hands, conducted it with energy and economy, and spent in completing it a sum exceeding that which the plain-tiffs were to receive by $196,000. This is the only legal evidence in the record. to show the situation in which the plaintiffs would have been placed by the full performance of the contract. No attempt has been made to impeach it, and we consider it conclusive against their claim for damages, even if the defendants had been in default. But we do not think they were in default ; though there had been many violations of the contract on both sides, neither party elected to consider it as broken. Their proceeding under it up to the time of the death of *Usal Hopkins* kept it in force between them, and by the death of this person it was cancelled and avoided. C. C. 2737. The defendants might have consented that the contract should go on between them, the heirs of *Hopkins,* and the other parties ; but their refusal to consent cannot subject them to dam-ages. As a general rule they are only bound to pay the plaintiffs the value of the work that had already been done, and that of the materials already pre-pared, proportionably to the price agreed on, in case such work and materials may be useful to them. C. C. 2738.

The defendants have received and kept labor and materials of the plaintiffs, and have made to them various payments, and the only question left open for our decision involves the settlement of their accounts, to be made in conformity with the foregoing dispositions of law. Two separate surveys and estimates of the work done, and of the materials furnished, by the plaintiffs. have been made by two competent engineers, proportionably to the prices agreed on in the contract. The difference between them is not material, and the defendants are willing that the highest should be taken as true. It amounts to $44,423 63. The plaintiffs' counsel alleges that this estimate is too low ; that it only allows them the price of common excavation for the excavation of many thousand yards of hard pan ; that it makes no allowance for the transport of a large quantity of spoil bank beyond the distance of 120 feet, for other extra work, and for losses sustained on implements and machinery. The survey made, *ex parte,* for the plaintiffs by *Baggerly,* and the testimony of their clerk, *Joseph A. Brown,* cannot be taken for true, in opposition to the surveys and estimates of the engineers *Banks* and *Petrie,* and the testimony of the witnesses who at-tended them. The surveys and estimates of *Banks,* which the defendants admit to be true, were made monthly under the contract ; the plaintiffs in whose presence they were made, received partial payments under them. We have no doubt of their correctness, as far as they go. The witnesses swear that there is no hard pan, properly so called, on the line of the railroad, but that

McCord
*v.*
West Felici-
ana Railroad
Company.

37

McCord
v.
West Felici-
ana Railroad
Company.

much of the excavation required the use of the pick, and was not common excavation. The contract allows 16 cents for every cubic yard of common excavation, and 35 cents for every cubic yard of hard pan. The letter of it does not embrace the hard substance found on the line of the railroad, but the engineers of the company classed it as hard pan; and, if the excavation through it was as difficult as through hard pan, their classification was equitable. They were selected by both parties as judges of the fact, and the estimates which they originally made in relation to this item should have been accepted and paid by the defendants.

The transportation of the spoil bank beyond the distance of 120 feet, is shown to have been made with the approbation of the engineer of the company, and the plaintiffs were entitled to compensation for it under the contract.

The engineers of the company testify that other extra work was done by the plaintiffs, which inured to the benefit of the defendants; and it is a serious question, whether, after the termination of the contract by the act of God, the plaintiffs are not in good conscience entitled to some indemnity for the loss they are shown to have sustained on their machinery, and particularly on the steam saw mill erected by them for the sole purpose of preparing the timber necessary for the road. The defendants have paid the plaintiffs on account of the railroad $34,078 92; and on account of the bridge, which was destroyed, as alleged in the answer, $9,500. They have discounted for them a note of hand, on which there is a balance due of 21,581 33; and finally they have advanced to them in money $3,100.

The evidence in the record is not sufficient to enable us to ascertain the real amount due the plaintiffs over and above the estimate of Banks; but we are satisfied that the whole amount of their claim would not exceed that of the defendants; and as the defendants have asked that the judgment be affirmed rather than the case should be sent back for a new trial, in order to ascertain the amount due them, the decree of the court will conform to that request.

*Judgment affirmed.*